UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Amanda Marie Lumsden and
Raymond Edward Lumsden,

Plaintiffs,

v.

Civ. No. 00-2463 (JEL/JGL)
ORDER

Dustin A. Reichert, in his individual capacity, Matthew Schuster, in his individual capacity, and Ramsey County,

Defendants.

---

David L. Garelic, Esq., and Larry B. Leventhal, Esq., Leventhal Law Office, appeared for Plaintiffs Amanda Marie Lumsden and Raymond Edward Lumsden.

Earl P. Gray, Esq., Gray & Malacko, appeared for Defendant Dustin A. Reichert.

Jon K. Iverson, Esq., Iverson Reuvers, LLC, appeared for Defendant Matthew Schuster.

Thomas E. Ring, Esq., Assistant County Attorney, Office of the Ramsey County Attorney, appeared for Defendant Ramsey County.

---

This is an action by Amanda Lumsden and Raymond Lumsden against two law enforcement officers, Dustin A. Reichert and Matthew Schuster, and Ramsey County (County). The Lumsdens assert claims under 42 U.S.C. § 1983 (2000), for violations of the Fourth Amendment and Fourteenth Amendment, and under Minnesota law for negligent supervision and negligent retention. The matter is before the Court on the County's Motion for Summary Judgment and Schuster's Motion for Summary Judgment. For the reasons set forth below, the Court grants both motions.

MAR 1 1 2003
FILED__________
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTERED__________
DEPUTY CLERK'S INITIALS__________

## I. BACKGROUND

Reichert worked for the Lake and Trails Unit of the Ramsey County Sheriff's Department (Department) as a Reserve Deputy from September 1995 to June 1997, as a Special Deputy from June 1997 to September 1997, and as a Special Deputy, Sergeant, from September 1997 to August 1998. From 1995 to May 1999, Schuster worked for the Department as a Reserve Deputy.

On January 3, 1998, Reichert was on duty from 1:00 p.m. to approximately 8:00 p.m., and Schuster was assigned to ride with him. At approximately 3:15 p.m., Reichert and Schuster took a lunch break at a restaurant in Maplewood, Minnesota. After lunch, Reichert mentioned he needed to stop by a house that was in the area. According to Schuster, Reichert stated he needed to speak with a man about a woman Reichert had dated and with whom he shared custody of a child. According to Reichert, he gave Schuster a brief overview of a problem he was having with Mr. Lumsden. Reichert told Schuster that Mr. Lumsden had dated the mother of Reichert's child, Joy Bell, and that Mr. Lumsden was violent, had been convicted of burglary, and continued to contact Bell which upset her. Reichert and Schuster arrived at the Lumsdens' house at approximately 4:30 p.m.

Reichert walked to the front door while Schuster remained in the squad car. Reichert knocked, received no response, and walked back toward the squad car. Schuster pointed at the front door and Reichert turned around to find Ms. Lumsden standing at the door. Reichert returned to the door and asked where Mr. Lumsden was. Ms. Lumsden responded that he was not there and that he would return after 6:00 p.m. Reichert asked her to tell Mr. Lumsden that he had stopped by, and mentioned that he might try to contact Mr. Lumsden later. Reichert returned to the squad car and told Schuster what Ms. Lumsden had said.

Reichert and Schuster returned to the Lumsdens' house at approximately 7:30 p.m. Reichert walked to the house, followed by Schuster, and knocked on the door. There is sharp disagreement between the parties as to what happened after Reichert knocked on the door. The Court will briefly summarize the events as recalled by Ms. Lumsden, Mr. Lumsden, Reichert, and Schuster.

According to Ms. Lumsden, she opened the chained door a few inches and saw Reichert standing at the door. Reichert asked whether Mr. Lumsden was there and she responded, "Yes." Planning to open the door to allow Reichert and Mr. Lumsden to speak, Ms. Lumsden partially closed the door and started to remove the chain when Reichert kicked open the door. She fell to the floor and Reichert stumbled over her. Either the door or Reichert's foot struck her left foot. Reichert proceeded upstairs, held Mr. Lumsden against a wall, argued about whether Mr. Lumsden had contacted Bell, and told Mr. Lumsden to retrieve any papers he had relating to Bell. Mr. Lumsden gave an envelope and some papers to Reichert. Meanwhile, Schuster stepped into the house approximately 30 seconds to 1 minute after Reichert had entered the house. Schuster helped Ms. Lumsden off the floor and she sat on the stairs. Schuster yelled to Reichert that they needed to leave. Schuster then left and Reichert followed him out a few seconds later. Ms. Lumsden estimated that Reichert and Schuster were in the house for approximately three minutes.

Mr. Lumsden's recollection of the events is consistent with that of Ms. Lumsden. According to Mr. Lumsden, the door burst open and Reichert tripped over Ms. Lumsden. Reichert walked up the stairs holding his gun in his right hand. At the top of the stairs, Reichert slammed Mr. Lumsden into a wall and held him there for approximately ten seconds. Mr. Lumsden pushed Reichert away and saw Schuster step into the house. Reichert grabbed Mr. Lumsden's shirt and held it for approximately 5 or 10 seconds. They argued for about whether Mr. Lumsden had contacted Bell. Reichert told Mr. Lumsden to gather anything related to Bell and give it to him. Mr. Lumsden went

to his bedroom, returned with a box, and gave some papers to Reichert. Meanwhile, Schuster was yelling at Reichert that he wanted to leave. After Mr. Lumsden gave the papers to Reichert, Schuster and Reichert left.

According to Reichert, Ms. Lumsden opened the door after he knocked. He asked if Mr. Lumsden was there and she responded that he was. She stepped aside and waved Reichert into the house. Reichert proceeded to the second step and remained there until he left. Schuster stood on the landing. Mr. Lumsden ended a phone conversation and then spoke with Reichert. Reichert said that he had heard that Mr. Lumsden had contacted Bell and asked him to leave her alone. Mr. Lumsden responded that Bell had written a note to a judge that allowed him to end his probation, and insisted that Reichert read it. Mr. Lumsden retrieved it from his bedroom and handed it to Reichert. Reichert and Schuster then left. Reichert estimated that he and Schuster were in the Lumsdens' house for 5 to 15 minutes.

According to Schuster, Ms. Lumsden opened the door, stepped aside, and motioned for Reichert to enter. After she walked upstairs, Reichert proceeded half-way up the stairs, and Schuster stood in the landing. Initially, Reichert spoke to Mr. Lumsden from the stairs. Later, they moved to the kitchen to continue their conversation. Mr. Lumsden retrieved a box containing letters Bell had written and showed them to Reichert. Schuster thought he and Reichert remained in the Lumsdens' house for less than ten minutes.

## II. DISCUSSION

In their Second Amended Complaint (Complaint), the Lumsdens assert claims against Schuster under 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

> thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured ....

The claims against Schuster include: (1) he unreasonably searched their house in violation of the Fourth Amendment; and (2) he failed to prevent Reichert's violations of their Fourth Amendment rights.[1] The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ...." The Lumsdens also assert claims against the County under Minnesota law for negligent supervision of Reichert and negligent retention of Reichert. The County and Schuster now move for summary judgment.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

---

[1] The Lumsdens assert claims against Reichert under 42 U.S.C. § 1983, as well. They allege Reichert violated their Fourth Amendment rights by unreasonably searching their house, using unreasonable force against them, and unreasonably seizing Mr. Lumsden's property. They also allege Reichert deprived them of "their right to privacy, and other rights, in a manner that shocks the conscience" in violation of the Fourteenth Amendment.

**A. Schuster**

*1. Under Color of State Law*

Schuster's first defense to the Lumsdens' section 1983 claims is that he was not acting under color of state law. The lone case cited by Schuster in support of his argument is *Russ v. Ratliff*, 538 F.2d 799 (8th Cir. 1976). In *Russ*, the widow and children of a man shot to death by a police officer, Ratliff, brought a section 1983 action against Ratliff and, among others, Draper who had accompanied Ratliff on the day of the shooting to familiarize himself with police procedures and was to join the police force the next day. *Russ*, 538 F.2d at 800. At the close of the plaintiffs' case, the district court granted a partial directed verdict in favor of Draper. *Id.* The Eighth Circuit affirmed, reasoning that he was not acting under color of state law because he "was not yet a city policeman but retained the status of a private citizen." *Id.* at 805. The Court finds *Russ* inapposite. Unlike Draper, who was not a member of the police force on the day of the shooting, Schuster worked for the Department as a Reserve Deputy when he visited the Lumsdens' house. This distinction, of course, does not necessarily mean that Schuster was acting under color of state law.

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). "The injury complained of must have been caused by the exercise of some right or privilege created by the state, by a rule of conduct imposed by the state, or by a person for whom the state is responsible." *Parker v. Boyer*, 93 F.3d 445, 448 (8th Cir. 1996). Reserve deputies are not licensed peace officers, but they must undergo training before serving as reserve officers. They volunteer to assist licensed officers. Reserve deputies do not carry firearms or ammunition, but they do wear uniforms and badges.

Schuster was on duty when he and Reichert visited the Lumsdens' house. Schuster arrived in a squad car and was wearing his uniform and badge. He had a police radio, handcuffs, and pepper spray on his belt, and was there to assist Reichert. Under these circumstances, the Court concludes that Schuster was acting under color of state law. *See Buranen v. Hanna*, 623 F. Supp. 445, 447 (D. Minn. 1985) (holding on-duty reserve officer of municipal police department acted under color of state law); *cf. Roe v. Humke*, 128 F.3d 1213, 1216 (8th Cir. 1997) (holding police officer who was off duty, was not wearing his uniform or badge or carrying a gun, and was driving his personal vehicle, did not act under color of state law when he sexually assaulted a minor); *Bruner v. Dunaway*, 684 F.2d 422, 424, 427 (6th Cir. 1982) (per curiam) (affirming denial of motion for judgment notwithstanding the verdict or for new trial made by "explorer boy scout acting as a reserve police officer" after jury found him liable in section 1983 action).

2. *Qualified Immunity*

Schuster's second defense to the Lumsdens' section 1983 claims is that he is entitled to qualified immunity. The doctrine of qualified immunity protects state actors from civil liability when "'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sexton v. Martin*, 210 F.3d 905, 909 (8th Cir. 2000) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When faced with an assertion of qualified immunity in a suit against an officer for an alleged violation of a constitutional right, a court must first consider whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001). Only if a constitutional violation could be established should the court then consider whether the right was clearly established. *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his

conduct was unlawful in the situation he confronted." *Id.* at 202. Accordingly, the Court must first determine whether Reichert violated the Fourth Amendment by searching the Lumsdens' house, using unreasonable force against the Lumsdens, and seizing Mr. Lumsden's property,[2] whether Schuster violated the Fourth Amendment by failing to prevent Reichert's actions, and whether Schuster violated the Fourth Amendment by searching their house.

The Lumsdens first claim that Reichert unreasonably searched their house. "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton v. New York*, 445 U.S. 573, 590 (1980). Viewed in the light most favorable to the Lumsdens, the record reveals that Reichert unreasonably searched their house when, without a warrant or exigent circumstances, he kicked open the front door and entered the house.

Next, the Lumsdens claim that Reichert used unreasonable force against them. Claims that law enforcement officers used excessive force in the course of an arrest, investigatory stop or other seizure of a free citizen should be analyzed under the reasonableness standard of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397; *see Winters v. Adams*, 254 F.3d 758, 765 (8th Cir. 2001). Whether an officer's use of force is reasonable "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S.

---

[2] The Court's analysis of Schuster's claim of qualified immunity begins with whether Reichert violated the Lumsdens' Fourth Amendment rights because one of the claims against Schuster is predicated on Reichert's conduct.

at 396. Circumstances such as the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is resisting arrest or attempting to evade arrest by flight are relevant to the reasonableness of the officer's conduct. *Id.*

Viewing the record in the light most favorable to the Lumsdens, the Court assumes that, without a warrant or other justification to enter the Lumsdens' house, Reichert kicked the door open, knowing that Ms. Lumsden was standing on the other side of it. He stumbled over her, and either the door or his foot struck her foot. Reichert, holding a gun, then confronted Mr. Lumsden and slammed him into a wall. Under these circumstances, Reichert's use of force was not objectively reasonable.

Finally, the Lumsdens claim Reichert unreasonably seized Mr. Lumsden's property. "A seizure under the Fourth Amendment occurs when there is 'some meaningful interference with an individual's possessory interest in that property.'" *Coonts v. Potts*, 316 F.3d 745, 750 (8th Cir. 2003) (quoting *Soldal v. Cook County*, 506 U.S. 56, 61 (1992)). "It is well settled that a seizure carried out without judicial authorization is per se unreasonable unless it falls within a well-defined exception to this requirement." *Dixon v. Lowery*, 302 F.3d 857, 862 (8th Cir. 2002). Viewing the evidence in the light most favorable to the Lumsdens, the Court assumes that Mr. Lumsden surrendered his papers relating to Bell in response to Reichert's demands. Reichert did not have a warrant to take them, and the Court is not aware of any exception to the warrant requirement that would justify their seizure. Under these circumstances, Reichert unreasonably seized Mr. Lumsden's property.

Given that the Lumsdens could establish Reichert violated their Fourth Amendment rights, the Court turns to their assertion that Schuster violated their rights by failing to prevent Reichert's alleged misconduct. As recognized by the Eighth Circuit, the leading case with respect to the duty

to intervene is *Byrd v. Brishke*, 466 F.2d 6 (7th Cir. 1972), which held that police officers who ignored assaults by other officers could be held liable under section 1983:

> We believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge. That responsibility obviously obtains when the nonfeasor is a supervisory officer to whose direction misfeasor officers are committed. So, too, the same responsibility must exist as to nonsupervisory officers who are present at the scene of such summary punishment, for to hold otherwise would be to insulate nonsupervisory officers from liability for reasonably foreseeable consequences of the neglect of their duty to enforce the laws and preserve the peace.

*Byrd*, 466 F.2d at 11, *quoted in Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981).

The Lumsdens first argue that Schuster failed to prevent Reichert's violations of their Fourth Amendment rights by failing to dissuade Reichert from returning to their house on January 3, 1998. This argument presupposes that Schuster knew Reichert planned to violate the Lumsdens' rights, but there is no evidence in the record that Reichert told Schuster of such a plan. Schuster therefore had no ability to prevent Reichert's violations of the Lumsdens' rights before he and Reichert returned to the Lumsdens' house. *Cf. Jennings v. Davis*, 476 F.2d 1271, 1275 (8th Cir. 1973) (no liability under section 1983 for failure to intervene so as to prevent police officer's unreasonable search and seizure of a person in the absence of duty, opportunity, or ability to do so).

The same conclusion is warranted with respect to the assertion that Schuster should have intervened when he was standing at the front door with Reichert. Again, according to Ms. Lumsden, Reichert knocked, asked for Mr. Lumsden, then kicked open the door while she was removing the chain. Reichert stumbled over her, proceeded upstairs, and slammed Mr. Lumsden into the wall. There is no evidence in the record that Schuster knew Reichert was going to engage in this conduct, and Reichert's actions took place too quickly for Schuster to stop them. Under these circumstances, Schuster had no ability to intervene.

Finally, the Lumsdens claim that Schuster failed to intervene so as to prevent Reichert's seizure of Mr. Lumsden's papers. Assuming that Schuster had a duty to intervene so as to prevent the seizure,[3] the Lumsdens' descriptions of Schuster's conduct inside the house belie the assertion that Schuster failed to intervene. At her deposition, Ms. Lumsden testified: "Schuster was yelling to [Reichert] that they had to leave and that they weren't supposed to be there. It wasn't supposed to happen and they needed to leave, and they left." At his deposition, Mr. Lumsden gave similar testimony: "[Schuster] was screaming to [Reichert] that he wanted to go, you know, he wanted no part in this. This is stupid. He was yelling up the steps to him." Because Schuster intervened, he cannot be held liable for Reichert's seizure of Mr. Lumsden's papers. That Schuster's intervention was unsuccessful does not render qualified immunity unavailable. Even if Schuster should have done more to prevent the seizure, it would not be clear to a reasonable officer that Schuster's conduct was unlawful. In sum, Schuster is entitled to qualified immunity from the Lumsdens' claim that he failed to intervene so as to prevent Reichert's violations of their constitutional rights.

---

[3] The Court is aware of Eighth Circuit decisions recognizing that an officer has a duty to intervene so as to prevent another officer's use of excessive force or unreasonable search and seizure of a person. *See e.g.*, *Putman*, 639 F.2d at 423 (beating of prisoner); *Jennings*, 476 F.2d at 1275 (unreasonable search and seizure of person). The parties have not cited, and the Court is not aware of, any Eighth Circuit decisions regarding an officer's duty to intervene so as to prevent another officer's unreasonable seizure of property. *Cf. Nicholson v. Moates*, 159 F. Supp. 2d 1336, 1356 (M.D. Ala. 2001) ("[E]ven assuming that an unlawful seizure of property can give rise to liability under a 'nonfeasance' theory, the Plaintiff has pointed to no, and the court is not aware of any, Eleventh Circuit precedent applying a nonfeasance theory outside the context of an excessive force case.").

The Lumsdens' other claim against Schuster is that he unreasonably searched their house.[4] It is undisputed that neither Reichert nor Schuster had a warrant to enter the Lumsdens' house. As already noted, law enforcement officers may not enter a house absent a warrant or exigent circumstances. *Payton*, 445 U.S. at 590; *United States v. Vance*, 53 F.3d 220, 221-22 (8th Cir. 1995). Exigent circumstances exist "when law enforcement officials have a 'legitimate concern for the safety' of themselves or others." *Vance*, 53 F.3d at 222 (quoting *United States v. Antwine*, 873 F.2d 1144, 1147 (8th Cir. 1989)). According to the Lumsdens, Schuster entered only after Reichert had kicked open the door, stumbled over Ms. Lumsden, and confronted Mr. Lumsden at the top of the stairs. Under these circumstances, Schuster had a legitimate concern for the safety of others, to wit, the Lumsdens.[5] Once inside, he remained on the landing. He did not extend his search into

---

[4] The Lumsdens' memorandum of law in opposition to Schuster's motion and statements made by their attorney at the motion hearing leave the Court uncertain as to whether they abandoned this claim. In their memorandum of law, the Lumsdens state that "it was unreasonable for him not to have dissuaded Reichert from going to the house in the first place and, *once there, not to have followed him upstairs and intervened*." (Emphasis added). To similar effect is the following exchange between the Court and the Lumsdens' attorney at the motion hearing:

> Q: What is your view about the clear duty of Schuster? He should have stayed outside or he should have gone in and done more? What do you think is the clear duty?
>
> A: I think it is not unlikely given the circumstances that he did go into the house to protect the [Lumsdens] to make sure nothing happened.
>
> Q: So, your complaint really isn't that he crossed the threshold. Your complaint is that he didn't do more once he was in there to stop Reichert with what he was doing?
>
> A: I would agree with that.

Later, the Lumsdens' attorney backed away from this position, stating that Schuster should not have entered the house. The Court assumes for present purposes that the Lumsdens have not abandoned this claim.

[5] Although the police cannot create the situations of urgency to take advantage of the exigent circumstances exception, this general rule "will not dispose ... of many cases." *United States v.*

areas of the house where Reichert was not. Because exigent circumstances justified Schuster's warrantless entrance and because he limited his search to an area where he could attempt to persuade Reichert to leave, his search was reasonable. Furthermore, even if Schuster's search was unreasonable, it would not be clear to a reasonable officer that stepping inside the house was unlawful given that Reichert had engaged in the conduct described by the Lumsdens. For these reasons, Schuster is entitled to qualified immunity.

**B. The County**

Before considering the County's motion, the Court will address several issues raised by the Lumsdens in their memorandum of law in opposition to the County's motion. First, the Lumsdens assert the County should be held liable for the actions of Reichert and Schuster under the doctrine of respondeat superior. The doctrine of respondeat superior is not available under section 1983 to impose liability on a governmental entity for the acts of its employees. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Next, the Lumsdens assert the County should be liable for negligently supervising Schuster. Because the Complaint does not allege the County negligently supervised Schuster, the Court declines to consider this argument. Third, the Lumsdens urge the Court to analyze their negligent supervision claim under the Restatement (Second) of Torts § 317 (1965). Section 317 applies when an employee acts "outside the scope of his employment." Because the Complaint alleges that "Reichert, at all times relevant hereto, was . . . acting within the course and scope of his employment," section 317 does not apply. *See Leidig v. Honeywell, Inc.*,

---

*Duchi*, 906 F.2d 1278, 1284 (8th Cir. 1990). To evaluate a claim of exigent circumstances, a court must consider how they arose. *Id.* According to the Lumsdens, a law enforcement officer, Reichert, literally created the exigent circumstances. Reichert's status, however, does not preclude Schuster from claiming exigent circumstances. Again, there is no evidence in the record that Schuster knew Reichert planned to engage in the conduct described by the Lumsdens. The exigent circumstances presented themselves to Schuster in an unexpected and unforeseen manner, and Schuster played no part in creating them. Under these circumstances, the Court concludes that exigent circumstances justified his warrantless entrance.

850 F. Supp. 796, 808 (D. Minn. 1994). Finally, the Lumsdens assert that a claim for negligent supervision encompasses a claim for negligent training. Minnesota does not recognize a cause of action for negligent training. *McKenzie v. Lunds, Inc.*, 63 F. Supp. 2d 986, 1007 (D. Minn. 1999). Having disposed of these issues, the Court turns to the County's motion.

*1. Negligent Supervision*

The Lumsdens' first claim against the County is for negligent supervision of Reichert. "[N]egligent supervision is the failure of the employer 'to exercise ordinary care in supervising the employment relationship, so as to prevent the foreseeable misconduct of an employee from causing harm to other employees or third persons.'" *M.L. v. Magnuson*, 531 N.W.2d 849, 858 (Minn. Ct. App. 1995) (quoting *Cook v. Greyhound Lines, Inc.*, 847 F. Supp. 725, 732 (D. Minn. 1994)). In an action against an employer based on negligence, liability is predicated on the fault of the employer. *Fahrendorff ex rel. Fahrendorff v. N. Homes, Inc.*, 597 N.W.2d 905, 912 (Minn. 1999). As a test for negligence, "'foreseeable' means a level of probability which would lead a prudent person to take effective precautions." *Id.* (quoting *Rodgers v. Kemper Constr. Co.*, 124 Cal. Rptr. 143, 148-49 (Cal. Ct. App. 1975)).

The County argues *inter alia* that Reichert's alleged misconduct was not foreseeable–that is, that there is no evidence in the record to show the Department knew or should have known before January 3, 1998, that Reichert posed a threat of harm. In response, the Lumsdens contend that Reichert's misconduct was foreseeable based on his previous investigation of and contacts with Mr. Lumsden. In 1996, one of Reichert's cousins, Kelly Vogel, dated Mr. Lumsden. Her brother, Ben Vogel, asked Reichert to investigate Mr. Lumsden. Reichert explained this situation to his supervisor, Sergeant Douglas Biehn, and asked how he could look up information on Mr. Lumsden without violating data privacy laws. Biehn told him to ask a private investigator. After a private

investigator explained how to access information from court records, Reichert discovered, among other things, that there were outstanding warrants for Mr. Lumsden's arrest. While the warrants were outstanding, Reichert provided information to other law enforcement officers about Mr. Lumsden's whereabouts. Eventually, Mr. Lumsden turned himself in.

According to Mr. Lumsden, Reichert also had three or four contacts with him before January 3, 1998, most of them most of them relating to his attempts to avoid arrest. The contacts included Reichert trying to apprehend him at Kelly Vogel's residence in Richfield, Minnesota, and Reichert chasing him in a car. Mr. Lumsden asked Detective Sergeant Kathleen Wourinen of the Saint Paul Police Department what Reichert was doing, and Wourinen responded that Reichert was helping her and that Mr. Lumsden should turn himself in. Mr. Lumsden admitted that Reichert never touched him and never spoke to him during the contacts.

Viewed in the light most favorable to the Lumsdens, this evidence fails to establish that Reichert's alleged misconduct on January 3, 1998, was foreseeable. There is no evidence in the record that Reichert threatened Mr. Lumsden during his conversation with Biehn. As to the contacts between Reichert and Mr. Lumsden before January 3, 1998, no physical contact took place, and no conversations took place. There is no evidence in the record that the contacts took place while Reichert was on duty and no evidence in the record that the Department knew about them. There is also no evidence in the record that the Department knew of Mr. Lumsden's complaint to Wourinen. Even if the Department should have known of his telephone conversation with Wourinen, Mr. Lumsden's complaint consisted only of the fact that Reichert was asking questions about him and pursuing him when there were outstanding warrants for his arrest. In sum, there is no evidence in the record that Reichert engaged in unreasonable searches or seizures, used unreasonable force, or threatened to do so before January 3, 1998. Reichert's actions on January 3,

1998, as described by the Lumsdens, therefore were not foreseeable. *See Patterson v. Wu Family Corp.*, 594 N.W.2d 540, 551-52 (Minn Ct. App. 1999) (affirming summary judgment in favor of bar on patron's negligent supervision claim because bouncer's physical assault of patron was not foreseeable in the absence of evidence that bouncer had used excessive force on previous occasions), *rev'd on other grounds*, 608 N.W.2d 863 (Minn. 2000). The Court therefore grants the County's motion on this claim.

*2. Negligent Retention*

The Lumsdens' other claim against the County is for negligent retention of Reichert. Negligent retention "occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge, or reassignment." *L.M. ex rel. S.M. v. Karlson*, 646 N.W.2d 537, 545 (Minn. Ct. App. 2002) (quoting *Yunker v. Honeywell Inc.*, 496 N.W.2d 419, 423-24 (Minn. Ct. App. 1993)).

The County asserts that the Lumsdens abandoned this claim because they did not oppose the County's motion on this claim. "Even if a motion for summary judgment stands unopposed, the district court must still determine that the moving party is entitled to judgment as a matter of law on that claim." *Interstate Power Co. v. Kan. City Power & Light Co.*, 992 F.2d 804, 807 (8th Cir. 1993). The Court therefore must decide whether the County is entitled to a judgment as a matter of law on the negligent retention claim. Viewed in the light most favorable to the Lumsdens, the record does not establish that the Department was aware or should have been aware of problems indicating that Reichert was not fit to serve. As already discussed, there is no evidence in the record that Reichert engaged in unreasonable searches or seizures, used unreasonable force, or threatened to do so before January 3, 1998. The Court therefore grants the County's motion on this claim.

## III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Schuster's Motion for Summary Judgment [Docket No. 41] is GRANTED.

2. Count I of the Second Amended Complaint is DISMISSED with respect to Schuster.

3. Count II of the Second Amended Complaint is DISMISSED with respect to Schuster.

4. The County's Motion for Summary Judgment [Docket No. 33] is GRANTED.

5. The Lumsdens' claim against the County for negligent supervision is DISMISSED.

6. The Lumsdens' claim against the County for negligent retention is DISMISSED.

Dated: March 11, 2003

JOAN ERICKSEN LANCASTER
United States District Judge