UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Amanda Marie Lumsden, et al.,

Plaintiffs,

v.

Dustin A. Reichert, et al.,

Defendants.

Case No. CIVIL 00-2463 (JNE/JGL)

**TRIAL BRIEF OF PLAINTIFFS AMANDA LUMSDEN AND RAYMOND LUMSDEN**

---

I. INTRODUCTION.

This matter concerns an action brought by Plaintiffs, Amanda Lumsden and Raymond Lumsden, against law enforcement officers, Dustin A. Reichert and Matthew Schuster, and Ramsey County, as the employer and supervisor of the individually named Defendants at all times relevant to Plaintiffs' allegations. The Lumsdens asserted claims under 42 U.S.C. § 1983, for violations of the Fourth and Fourteenth Amendment, and under Minnesota law for negligent supervision and negligent retention, for conduct which occurred during an incident at their home on January 3, 1998.

On January 3, 1998, Defendant Ramsey County Reserve Sheriff Reichert had a personal grievance with Plaintiff Raymond Lumsden. The subject matter of Defendant Reichert's grievance concerned allegations of Mr. Lumsden attempting to make third party contact with Joy Bell. Joy Bell is the mother of a young child whose father is Reichert, and who, prior to her involvement with Defendant Reichert, was in a relationship with Mr. Lumsden.

During his mission to confront and intimidate Lumsden concerning his grievance, Reichert visited Plaintiffs' townhouse on two separate occasions on January 3, 1998. Failing to

find Mr. Lumsden home at approximately 4:30 p.m., Reichert returned to the Lumsden residence at approximately 7:30 p.m. that same evening. During both visits, Defendant Reichert approached the Lumsden residence in a fully outfitted and clearly identifiable squad car, while in his Sheriff's uniform, armed and accompanied by his partner, Defendant Reserve Deputy Matthew Schuster. On the occasion of the second visit, Deputy Sheriff Reichert gained entrance to the Lumsden residence, and Reserve Deputy Schuster followed him into the home.

Defendant Reichert's personal grievance had nothing to do with his assigned duties as a part-time, licensed Special Deputy assigned to the Ramsey County Sheriff's Department Lake and Trails Unit. Defendant Reichert received a verbal reprimand for leaving his assigned duty, as his primary responsibility was the Lake and Trails Unit. A Report dated January 3, 1998 that was filed by Sergeant K. Halweg, of the Maplewood Police Department, as part of his investigation into the incident at the Lumsden home less than two hours after the second visit, indicates, among other things, that the "situation appears to be a personal matter between these people and never should have had the 'implied authority' of uniformed deputies involved."

As a direct result of Reichert's unlawful entry of the Lumsden home, Ms. Lumsden suffered permanent injury to her foot, and she and Mr. Lumsden suffered humiliation, embarrassment and emotional distress arising from the unlawful invasion of their privacy.

II. <u>PROCEDURE / STATUS OF DEFENDANTS</u>.

Following discovery, Defendant Ramsey County and Defendant Schuster each brought a Motion for Summary Judgment. By Order dated March 11, 2003, United States District Judge

Joan Ericksen granted both motions.[1]

Reichert brought no Motion for Summary Judgment.

III. FACTS.

This Court has previously had occasion to summarize the facts of this case. Plaintiffs therefore reproduce in large part below the concise statement of the facts presented in the Background section of the March 11, 2003 Order by United States District Judge Ericksen, which they find applicable to the matter before the Court.[2] It should be noted that Plaintiffs preface this Court's summary of the facts with a section that briefly details the background that gave rise to Defendant Reichert's personal mission to their home on January 3, 1998. Plaintiffs complete their statement of facts presented herein with brief descriptions of the visit to their home by Maplewood Police following the incident and Ms. Lumsden's treatment at a local hospital thereafter.

A. Dustin Reichert's involvement with Raymond Lumsden's life

______After Mr. Lumsden stopped dating Joy Bell, he began dating a woman named Kelly Vogel. Ms. Vogel is Mr. Reichert's cousin. At some point during the summer of 1996 when Mr.

---

[1] This Court concluded that Schuster was entitled to qualified immunity, finding that he had no ability to prevent Reichert's violations of the of the Lumsdens' rights before he and Reichert returned to the Lumsdens' home during the second visit on January 3, 1998, and that he intervened, however unsuccessfully, in attempting to get Reichert to leave the Lumsdens' home, and thus it would not be clear to a reasonable officer that his conduct was unlawful.

Judge Ericksen granted Ramsey County's Motion for Summary Judgment after concluding that Plaintiffs could not sustain their claims for *Respondeat Superior* liability under section 1983, or for negligent supervision and retention, under Minnesota law.

[2] A more detailed statement of the facts may be found in Plaintiffs' Memorandum in Opposition to Motion of Defendant Ramsey County and Motion of Individually Named Defendant Matthew Schuster, which includes appropriate citations to the record.

Lumsden and Ms. Vogel were dating, Kelly's brother, Ben Vogel, called Reichert and expressed some concerns about Mr. Lumsden because he had received a call from Joy Bell. Ben Vogel wanted to know what Reichert could find out about Raymond Lumsden. Reichert then approached his supervisor, who advised him to talk to a private investigator. Subsequently, Reichert began to investigate Mr. Lumsden's background. During the course of said investigation, Reichert met Joy Bell. In his own words, he "got to know Joy through looking into Lumsden's past." Deputy Reichert and Joy Bell had an on-and-off relationship for approximately eight months. After Deputy Reichert and Ms. Bell broke up, they found out Ms. Bell was pregnant.

Reichert testified that he got angry and still gets angry at Joy Bell at times when she tells him about her relationship with Raymond Lumsden. He said he had "lots" of conversations with Joy Bell about Mr. Lumsden. He also said there were certain stories Joy Bell told him about Mr. Lumsden, sometimes repeatedly, in great detail, that, in her mind, really traumatized her. Deputy Reichert further stated that Joy Bell called him constantly to express her frustration that nothing was being done about Mr. Lumsden when she felt he was violating the law.

B. Incident of January 3, 1998 as summarized in the concise Statement of Facts presented in the Background Section of the March 11, 2003 Order by United States District Judge Ericksen.

"Reichert worked for the Lake and Trails Unit of the Ramsey County Sheriff's Department (Department) as a Reserve Deputy from September 1995 to June 1997, as a Special Deputy from June 1997 to September 1997, and as a Special Deputy, Sergeant, from September 1997 to August 1998. From 1995 to May 1999, Schuster Worked for the Department as a Reserve Deputy."

"On January 3, 1998, Reichert was on duty from 1:00 p.m. to approximately 8:00 p.m. and Schuster was assigned to ride with him. At approximately 3:15 p.m., Reichert

mentioned he needed to stop by a house that was in the area. According to Schuster, Reichert stated he needed to speak with a man about a woman Reichert had dated and with whom he shared custody of a child. According to Reichert, he gave Schuster a brief overview of a problem he was having with Mr. Lumsden. Reichert told Schuster that Mr. Lumsden had dated the mother of Reichert's child, Joy Bell, and that Mr. Lumsden was violent, had been convicted of burglary, and continued to contact Bell which upset her. Reichert and Schuster arrived at the Lumsdens' house at approximately 4:30 p.m."

"Reichert walked to the front door while Schuster remained in the squad car. Reichert knocked, received no response, and walked back toward the squad car. Schuster pointed at the front door and Reichert turned around to find Ms. Lumsden standing at the door. Reichert returned to the door and asked where Mr. Lumsden was. Ms. Lumsden responded that he was not there and that he would return after 6:00 p.m. Reichert asked her to tell Mr. Lumsden that he had stopped by, and mentioned that he might try to contact Mr. Lumsden later. Reichert returned to the squad car and told Schuster what Ms. Lumsden had said."

"Reichert and Schuster returned to the Lumsdens' house at approximately 7:30 p.m. Reichert walked to the house, followed by Schuster, and knocked on the door. . . ."

"According to Ms. Lumsden, she opened the chained door a few inches and saw Reichert standing at the door. Reichert asked whether Mr. Lumsden was there and she reported, "Yes." Planning to open the door to allow Reichert and Mr. Lumsden to speak, Ms. Lumsden partially closed the door and started to remove the chain when Reichert kicked open the door. She fell to the floor and Reichert stumbled over her. Either the door or Reichert's foot struck her left foot. Reichert proceeded upstairs, held Mr. Lumsden against a wall, argued about whether Mr. Lumsden had contacted Bell, and told Mr. Lumsden to retrieve any papers he had relating to Bell. Mr. Lumsden gave an envelope and some papers to Reichert. Meanwhile, Schuster stepped into the house approximately 30 seconds to 1 minute after Reichert had entered the house. Schuster helped Ms. Lumsden off the floor and she sat on the stairs. Schuster yelled to Reichert that they needed to leave. Schuster then left and Reichert followed him out a few seconds later. Ms. Lumsden estimated that Reichert and Schuster were in the house for approximately three minutes."

"Mr. Lumsden's recollection of the events is consistent with that of Ms. Lumsden. According to Mr. Lumsden, the door burst open and Reichert tripped over Ms. Lumsden. Reichert walked up the stairs holding his gun in his right hand. At the top of the stairs, Reichert slammed Mr. Lumsden into a wall and held him there for approximately ten seconds. Mr. Lumsden pushed Reichert away and saw Schuster step into the house. Reichert grabbed Mr. Lumsden's shirt and held it for approximately 5 or 10 seconds. They argued [ ] about whether Mr. Lumsden had contacted Bell. Reichert told Mr. Lumsden to gather anything related to Bell and give it to him. Mr. Lumsden went to his bedroom, returned with a box, and gave some papers to Reichert. Meanwhile, Schuster was yelling at Reichert that he wanted to leave. After Mr. Lumsden gave the papers to Reichert, Schuster and Reichert left."

C. The follow-up visit by Maplewood Police.

A few minutes after the officers left, Mr. Lumsden shut the door and helped Ms. Lumsden up the steps. They went into the kitchen to get some ice for Ms. Lumsden's foot and called the Maplewood Police. The Maplewood Police came and took a report after talking with the Lumsdens for a while. Ms. Lumsden was crying from the intense pain she was suffering from the injury to her foot. She wanted to go to the hospital.

The Maplewood Police Officer, Sergeant K. Halweg, said it was important that he get an initial statement so he could write his own report. In his report of January 3, 1998, Sergeant Halweg notes, among other things, that Ms. Miller stated that the same deputy who had come to the residence earlier returned at 16:30, forced the door open and caused injury to her foot. His report also states: "This situation appears to be a personal matter between these people and never should have the 'implied authority' of uniformed deputies involved."

In her statement to the Maplewood Police, Ms. Lumsden wrote, among other things, about her foot injury and the fact that "both officers proceeded into the house."

D. Ms. Lumsden's treatment at St. John's Hospital on January 3, 1998.

Later that evening, Ms. Lumsden was admitted to the emergency room at St. John's Hospital, in Maplewood, where she received x-rays for the injury to her foot. She was told that her foot was bruised, but not broken. She was given crutches and a prescription for painkiller. She was on the crutches for two to three weeks.

IV. LIABILITY OF REICHERT.

This Court concluded that there is a factual basis for Defendant Reichert's liability in this matter as follows:

> Viewed in the light most favorable to the Lumsdens, the record reveals that Reichert unreasonably searched their house when, without a warrant or exigent circumstances, he kicked open the front door and entered the house. (Order at 8).

> Viewing the record in the light most favorable to the Lumsdens, the Court assumes that, without a warrant or other justification to enter the Lumsden's house, Reichert kicked the door open, knowing that Ms. Lumsden was standing on the other side of it. He stumbled over her, and either the door or his foot struck her foot. Reichert, holding a gun, then confronted Mr. Lumsden and slammed him into a wall. Under these circumstances, Reichert's use of force was not objectively reasonable. (Order at 9).

Plaintiffs expect to demonstrate Reichert's liability for the injuries detailed in the following section through evidence developed at trial.

## V. INJURIES.

### A. Amanda Lumsden's foot injury.

Amanda Lumsden was 18 years old at the time of the incident on January 3, 1998 when her left foot was injured. She had never previously suffered an injury to her left foot. As noted above, Ms. Lumsden was admitted to St. John's Hospital, in Maplewood, where she received treatment for her foot injury, which included x-rays, crutches and painkiller. She is twenty-five now.

Since sustaining the injury on January 3, 1998, Ms. Lumsden has suffered tenderness and unrelenting discomfort in her left foot. She formerly led an extremely active life, enjoying activities including biking, jogging, roller-blading, skating, dancing, cross-country skiing and downhill skiing. Now, as a result of the injury sustained on January 3, 1998, she can no longer do those things for any reasonably sustained period of time without experiencing considerable foot pain. As noted by her current treating podiatrist, Eugene L. Dela Cruz, DPM,

> "The pain is mostly with extension of her toes and with wearing higher heels. Cold temperatures also exacerbate the pain. She also has tenderness with wearing shoes that

> have laces. This is just about with any type of athletic activity, especially biking and jogging."

(April 18, 2002 Correspondence from Eugene L. Dela Cruz, DPM, attached hereto as Exhibit A).

Moreover, Ms. Lumsden's foot injury is *permanent*. Her treating podiatrist states that

> "she has sustained permanent long-term affects due to the injury she sustained on her left foot, in which she currently now has symptoms of arthritis on her left foot. This is very unusual to occur for her age with normal wear and tear, but due to the direct blow, I believe she has sustained some long-term permanent injury." (Id.)

As the premature onset of arthritis caused by the injury has worsened, the pain has crept into all facets of Ms. Lumsden's life. Indeed, Ms. Lumsden finds it difficult to walk for any extended period of time without experiencing severe discomfort. While daily circumstances can give rise to the pain, it is even worse in situations that rise above the average. For example, Ms. Lumsden's foot pain was exacerbated during both of her two pregnancies--April 2000 to January 2001 and December 2003 to August 2004–due to the extra weight she was carrying.

As of April 18, 2002, Dr. Dela Cruz believed that reconstructive surgery could be explored as an option to ease Ms. Lumsden's pain. (Id.). Ms. Lumsden worries about assuming the risks of such surgery. It is her understanding that the surgery involves fusing bones in her foot, and her activities could be curtailed to an even greater extent following such surgery. Indeed, the clinical notes of Dr. Dela Cruz from October 7, 2004, when he and Ms. Lumsden again discussed options for dealing with her continuing pain, indicate that a key consideration in holding off on such surgery for the time being is that "it relates to her home life with her little children." (October 7, 2004 clinical notes of Dr. Eugene L. Dela Cruz, attached hereto as Exhibit B). Ms. Lumsden would not have to worry about the risks of surgery were it not for the incident of January 3, 1998.

The orthotics that Ms. Lumsden is compelled to wear also limit the type of shoes that she is able to wear. Per the clinical notes of Dr. Dela Cruz dated October 7, 2004, which note, among other things, that he discussed proper footgear selection and fitting instructions with Ms. Lumsden,

> "If she does not wear the orthotics she is in quite a bit of pain, which is mostly throbbing and sometimes sharp. This worsens towards the end of the day." (Id.)

B. Other Injuries.

Amanda Lumsden and Raymond Lumsden have suffered emotional distress as a result of the invasion of privacy occasioned by the unlawful entry of their home by Defendant Reichert and his subsequent misconduct on January 3, 1998. Plaintiffs' Section 1983 claims include their rights to be free from unreasonable search and seizure pursuant to the Fourth Amendment of the United States Constitution. Plaintiffs' Section 1983 claims also include their rights to privacy as guaranteed by the Fourteenth Amendment of the United States Constitution.

## VI. TRIAL ISSUES.

A. Evidentiary Issues.

Plaintiffs anticipate no unusual evidentiary issues in this matter.

B. Witness and Exhibit Lists.

Plaintiffs are submitting their witness and exhibit lists herewith.

C. Proposed Jury Instructions / Voir Dire Questions.

Plaintiffs are likewise submitting their proposed jury instructions and voir dire questions herewith.

D. Damages.

Damages are to be established primarily through the testimony of Ms. Lumsden's treating physician, Eugene L. Dela Cruz, DPM. Plaintiffs have scheduled and made arrangements to have Dr. Dela Cruz testify in person as their opening witness on Thursday, November 4, 2004, at 1:30 p.m. In deference to his professional schedule, Plaintiffs respectfully request that the Court will reconvene the Jury at that time and thereby facilitate the testimony of Dr. Dela Cruz.

E. Punitive Damages.

Plaintiffs are confident that the outrageous conduct of Defendant will justify an award of punitive damages, as requested in their Complaint and in the jury instructions being submitted.

Dated: November 2, 2004

s/David L. Garelick

David L. Garelick, #0285560
Larry B. Leventhal, #62534
LARRY LEVENTHAL & ASSOCIATES
Suite 420–Sexton Building
529 South 7th Street
Minneapolis, MN 55415
(612) 333-5747

*Attorneys for Plaintiffs Amanda Lumsden and Raymond Lumsden*